## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LAWRENCE DOMENICHELLO,
individually and on behalf of all others
similarly situated,

194 Varney Mill Rd.
Windham, ME 04062,

    *Plaintiff,*

v.

INSIGHTIN HEALTH, INC.

145 West Ostend Street
Suite 600 - #3425
Baltimore, MD 21230

    *Defendant*.

**Case No: 1:26-cv-484**


**JURY TRIAL DEMANDED**

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Lawrence Domenichello, individually and on behalf of a class of similarly situated persons, brings this Class Action Complaint and alleges the following against defendant Insightin Health, Inc. ("Insightin" or "Defendant"), based upon personal knowledge with respect to Plaintiff, and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1.   Plaintiff brings this class action against Insightin for its failure to properly secure Plaintiff's and Class Members' personally identifiable information ("PII") and personal health information ("PHI").

2.   Insightin failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiff seeks, among other things, orders requiring Insightin to fully

and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3. Insightin is a software company that provides healthcare software services to its clients. It markets its "inGAGE" software as "a cloud-based connector that breaks down data silos to create a connected data ecosystem."

4. On January 28, 2026, Insightin disclosed to the Vermont Attorney General that "an unauthorized actor gained access to the Insightin network" in September of 2025, and gained access to its customers' patients' health records (the "Data Breach").

5. As a health care provider, Insightin knowingly obtained sensitive PII and PHI and had a resulting duty to securely maintain that information in confidence. Plaintiff and Class Members would not have provided their PII and PHI to Insightin if they had known that Insightin would not ensure that it used adequate security measures.

6. Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were exposed in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief, including substantial improvements to Insightin's data security policies and practices.

**PARTIES**

7. Plaintiff Lawrence Domenichello is a resident of Windham, Maine, and has been a patient of Insightin customer Martin' Point Health Care over the last 20 years. Mr. Domenichello received a letter from Insightin dated January 28, 2026, which disclosed that

2

"certain information relating to [him] was contained within the files that may have been accessed or copied" as a result of the Data Breach.

8.     Defendant Insightin Health, Inc. is a Delaware corporation, with its headquarters in Baltimore, Maryland.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Minimal diversity exists because Plaintiff Bryant and putative Class Members reside outside the State of Maryland. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

10.     This Court has general personal jurisdiction over Insightin because it is headquartered in and maintains its principal place of business in this District. 28 U.S.C. 1391(a). Insightin is authorized to and regularly conducts business in Maryland.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### The Data Breach

12.     Insightin is a software company headquartered in Baltimore that provides healthcare software services to its clients, including Martin's Point Health Care. Insightin claims

that its services enable "[h]ealth plans [to] improve quality measurements, gain higher member satisfaction, and increase member retention."[1]

13.    Due to the nature of the services it provides, Insightin acquires and electronically stores PII and PHI. Insightin was therefore required to ensure that PII and PHI were not disclosed or disseminated to unauthorized third parties without Plaintiff's and Class Members' express written consent.

14.    On January 28, 2026, Insightin disclosed to the Vermont Attorney General that "an unauthorized actor gained access to the Insightin network" in September of 2025, and gained access to its customers' patients' health records (the "Data Breach").

15.    Around the same time, Insightin posted a "Notice of Data Privacy Event" on its website. That Notice disclosed that the information that might have been affected for each individual includes their "member name, date of birth, and a non-unique identifier assigned by health insurance providers, and on a limited circumstance, contract numbers and Medicare Beneficiary Identifiers issued by the Centers for Medicare and Medicaid as well as information associated with attributed providers may also have been exposed."[2]

16.    However, Mr. Domenichello's letter reflects that his "health plan information, contact information, date of birth [and] gender" were exposed.

17.    Insightin has not otherwise made any public statement as to the Data Breach.

18.    Insightin's failure to disclose any additional information regarding the Data Breach is inimical to its patients' interests. Insightin should be required to disclose why PII and

---

[1] Glassdoor – Insightin Health, available at https://www.glassdoor.com/Overview/ Working-at-Insightin -Health-EI_IE2854709.11,27.htm (last accessed on Feb. 4, 2026).

[2] Notice of Data Privacy Event, available at https://insightinhealth.com/notice-of-data-event/ (last accessed on Feb. 4, 2026).

PHI were stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and what Insightin knows about the degree to which the data has been disseminated.

19.     Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Insightin has taken to secure the PII and PHI still in its possession. Plaintiff seeks to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiff's and Class Members' interests, and ensure that Insightin has proper measures in place to prevent similar incidents from occurring in the future.

### Insightin's Security Representations

20.     Insightin's website includes a "Insightin Health Privacy Statement," which applies to Insightin's "collection and use of information, including personal information and information subject to … privacy laws, such as HIPAA," and discloses Insightin's collection of wide-ranging "[p]ersonal information categories listed in state statutes" and lists examples including "bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information."[3]

21.     The Privacy Statement also identifies several types of information Insightin discloses to third parties, and additional circumstances under which it discloses patient information to third parties.[4] None of that material accounts for the disclosure of that information to cyber-criminals.

---

[3] Insightin Health Privacy Statement, available at https://insightinhealth.com/privacy-policy/ (last accessed Feb. 4, 2026).

[4] *Id.*

22.    Insightin also claims on the home page of its website that its software service "ensur[es] privacy and compliance."[5]

**The Healthcare Sector is a Primary Target for Data Breaches**

23.    Insightin was on notice that companies in the healthcare industry are susceptible targets for data breaches.

24.    Insightin was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically noted that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[6]

---

[5] Insightin Health, available at https://insightinhealth.com/ (last accessed Feb. 4, 2026).

[6] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf) (last accessed Feb. 4, 2026).

25.    The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[7], to 1,638 in 2021.[8] As a recent report reflects, "[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful ransomware campaigns."[9]

26.    At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[10] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[11] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.[12]

---

[7] *See* Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/ business/resources/reports/2021-data-breach-investigations-report.pdf (last accessed Feb. 4, 2026).

[8] *See* Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last accessed Feb. 4, 2026).

[9] *Id.* at 62.

[10] *2018 End-of-Year Data Breach Report*, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last accessed Feb. 4, 2026).

[11] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last accessed Feb. 4, 2026).

[12] *Id.*

27.    Healthcare-related breaches have persisted because criminals see electronic patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported having a significant security incident in the previous 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[13] "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[14]

28.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[15]

29.    As major healthcare services providers, Insightin knew, or should have known, the importance of safeguarding Plaintiff's and Class Members' PII and PHI entrusted to them

---

[13] *2019 HIMSS Cybersecurity Survey* (available at https://www.himss.org/ sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report. pdf) (last accessed Feb. 4, 2026).

[14] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks) (last accessed Feb. 4, 2026).

[15] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited Feb. 4, 2026).

and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Plaintiff and Class Members by virtue of a breach. Insightin failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

30.     Moreover, Insightin has been the victim of multiple cyberattacks that are very similar to the one that they are facing in this present lawsuit.

31.     On March 28, 2016, Insightin discovered that it was the target of a ransomware attack when certain users could not log onto their system.[16] The pop up that appeared when employees tried to log in was a demand for 45 bitcoins in exchange for the release of the digital data.[17]

32.     Insightin decided to shut down their entire system and operated using paper records for at least five days as they tried to stop the virus from spreading.[18] The following year in 2017, the Maryland Health Care Commission issued a report on the state of the data breaches in the health care industry and named the Insightin attack one of the "two high profile hacking incidents" in Maryland.[19]

---

[16] Marianne K. McGee, *Insightin Shuts Systems After Cyberattack*, InfoRisk Today, Mar. 29, 2016, https://www.inforisktoday.com/medstar-shuts-systems-after-cyberattack-a-8999 (accessed on Feb. 4, 2026).

[17] John Woodrow Cox, *Insightin Health Turns Away Patients After Likely Ransomware Cyberattack*, Washington Post (Mar. 29, 2016), https://www.washingtonpost.com/local/medstar-health-turns-away-patients-one-day-after-cyberattack-on-its-computers/2016/03/29/252626ae-f5bc-11e5-a3ce-f06b5ba21f33_story.html.

[18] Marianne K. McGee, *Insightin Shuts Systems After Cyberattack*, InfoRisk Today, Mar. 29, 2016, https://www.inforisktoday.com/medstar-shuts-systems-after-cyberattack-a-8999; Andrea McDaniels and Ian Duncan, *Insightin Hack Shows Risks that Come with Electronic Health Records*, The Baltimore Sun (Aug. 19, 2019) (updated), https://www.baltimoresun.com/2016/04/02/medstar-hack-shows-risks-that-come-with-electronic-health-records/?clearUserState=true.

[19] Maryland Health Care Commission, Health Care Data Breaches: A Changing Landscape, 7-8 (June 2017),

33.     Insightin Health has reported to the Department of Health and Human Services ("DHHS") Office for Civil Rights that they experienced a hacking incident of its network server on September 25, 2020. On May 3, 2024, the reported another incident to DHHS and sent a letter to almost 184,000 patients notifying them that their data may have been compromised due to unauthorized access of employee email accounts over the course of ten months.[20] The class action lawsuit that resulted was *Riddick v. Insightin Health, Inc.*, Case No. 1:24-cv-01335-BAH. There is currently a proposal to settle the class action lawsuit where Insightin is offering to compensate patients up to $5,000 per putative class member for a total of $1.5 million.[21]

### Insightin Stores Plaintiff's and Class Members' PII and PHI

34.     Insightin obtained and stored a massive amount of PII and PHI. As a condition of engaging in health care services, Insightin and its affiliates required that patients entrust them with highly confidential PII and PHI.

35.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Insightin assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

---

https://mhcc.maryland.gov/mhcc/pages/hit/hit/documents/HIT_DataBreachesBrief_Brf_Rpt_090717.pdf.

[20] Suzanne Smalley, *Nearly 184,000 Insightin Health Patients' Personal Data Possibly Breached*, The Record (May 7, 2024), https://therecord.media/medstar-health-data-breach.

[21] *Riddick v. Insightin Health, Inc.*, Case No. 1:24-cv-01335-BAH, Notice of Proposed Class Action Settlement, https://www.medstarhealth.org/-/media/project/mho/medstar/pdf/class-action-settlement-notice.pdf (accessed on Feb. 4, 2026).

36.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI, and relied on Insightin to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

37.     Insightin was aware that the PII and PHI it collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

38.     PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[22] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[23] Moreover, "fullz" packages, which include "extra information about [a] legitimate credit card owner in case" a scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[24]

39.     PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

---

[22] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Feb. 4, 2026).

[23] Center for Internet Security, *Data Breaches: In the Healthcare Sector* (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last accessed Feb. 4, 2026).

[24] Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud- dark-web/ (last accessed Feb. 4, 2026).

40.     Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[25]

41.     The ramifications of Insightin's failure to keep Plaintiff's and Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

42.     Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

43.     Approximately 21% of victims do not realize their identity has been compromised until more than two years after it happens.[26] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of

---

[25] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last accessed Feb. 4, 2026).

[26] *See* Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last accessed Feb. 4, 2026).

medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[27]

44.     Insightin knew, or should have known, the importance of safeguarding PII and PHI entrusted to them and of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members because of a breach. Insightin failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**The Data Breach Exposed Plaintiff and Class Members
to Identity Theft and Out-of-Pocket Losses**

45.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

46.     Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, Insightin's policies and practices with respect to maintaining the security of Plaintiff's and Class Members' PII and PHI were reckless, or at the very least, negligent.

47.     In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of Insightin's misfeasance.

---

[27] Experian, The Potential Damages and Consequences of Medical Identity Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last accessed Feb. 4, 2026).

48.    Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[28]

49.    As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

    a.    invasion of privacy;

    b.    theft of their PII and PHI;

    c.    lost or diminished value of their PII and PHI;

    d.    lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

    e.    loss of the benefit of their bargain;

    f.    lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

    g.    statutory damages;

    h.    nominal damages; and

    i.    the continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Insightin's possession and is subject to further unauthorized disclosures so long as Insightin fails to undertake appropriate and adequate measures to protect the PII and PHI.

---

[28]    2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last accessed Feb. 4, 2026).

**Insightin's Lax Security Violates HIPAA**

50.    Insightin had a non-delegable duty to ensure that all PHI it collected and stored was secure.

51.    Insightin is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

52.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

53.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

54.    HIPAA requires that Insightin implement appropriate safeguards for this information.

55.    Despite these requirements, Insightin failed to comply with its duties under HIPAA and their own Privacy Practices. In particular, Insightin failed to:

   a.    maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

   b.    adequately protect Plaintiff's and Class Members' PHI;

15

c.  ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d.  implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e.  implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f.  implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g.  protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h.  ensure compliance with the electronic PHI security standard rules by their workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i.  train all members of their workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

56.    Insightin failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiff's and Class Members' PHI.

16

**Insightin Violated FTC Guidelines**

57.    The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Insightin from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

58.    The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[29]

59.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[30] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

60.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for

---

[29] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Feb. 4, 2026).

[30] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Feb. 4, 2026).

suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[31]

61.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62.     Insightin failed to properly implement basic data security practices. Insightin's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

63.     Insightin was at all times fully aware of its obligation to protect Plaintiff's and Class Members' PII and PHI because of its position as a healthcare provider. Insightin was also aware of the significant repercussions that would result from its failure to do so.

**Plaintiff's Experience**

64.     Plaintiff Lawrence Domenichello has been a patient at a Martin's Point health care facility in Windham, Maine over the course of the last 20 years.

65.     Insightin obtained Mr. Domenichello's PII and PHI in the course of conducting its regular business operations.

66.     At the time of the Data Breach, Insightin retained Mr. Domenichello's PII and PHI.

---

[31]     FTC, *Start With Security*, *supra*.

67.     In recent months, Mr. Domenichello has noticed an increase in his receipt of spam emails, calls, and texts.

68.     Mr. Domenichello greatly values his privacy and is very careful about sharing his sensitive PII and PHI. Mr. Domenichello diligently protects his PII and PHI and takes proactive steps to ensure his PII and PHI are kept safe and secure, and stores any documents containing PII and PHI in a safe and secure location. He has never knowingly transmitted unencrypted sensitive PII or PHI over the Internet or any other unsecured source.

69.     Insightin obtained and continues to maintain Mr. Domenichello's PII and PHI and has a continuing legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

70.     The Data Breach has caused Mr. Domenichello to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from his PII and PHI being placed in the hands of criminals.

71.     As a result of the Data Breach, Mr. Domenichello is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

72.     Mr. Domenichello has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remain backed up in Insightin's possession, are protected and safeguarded from future breaches.

**CLASS ACTION ALLEGATIONS**

73.     This civil action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4). Plaintiff seeks certification of the following class:

All persons in the United States and its territories whose PII and/or PHI was compromised in the Data Breach.

74.     Excluded from the Class are Insightin, any entity in which Insightin has a controlling interest, and Insightin's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

75.     Plaintiff reserves the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

76.     **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. Upon information and belief, the number of individuals whose PII and PHI was exposed by Insightin is at least in the thousands. All Class Members' names and addresses are available from Insightin's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

77.     **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.   Whether and to what extent Insightin had a duty to protect the PII and PHI of Class Members;

    b.   Whether Insightin was negligent in collecting and storing Plaintiff's and Class Members' PII and PHI;

    c.   Whether Insightin had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

    d.   Whether Insightin took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII and PHI;

e.  Whether Insightin failed to adequately safeguard the PII and PHI of Class Members;

f.  Whether Insightin failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g.  Whether Insightin adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

h.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Insightin's wrongful conduct;

i.  Whether Plaintiff and Class Members are entitled to restitution because of Insightin's wrongful conduct;

j.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k.  Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

78.    **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class Member, was disclosed by Insightin. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Insightin's common misconduct. Plaintiff is advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

79. **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Insightin to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

80. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Insightin has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Insightin's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Insightin's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

81. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Insightin. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

82.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Insightin would necessarily gain an unconscionable advantage in non-class litigation, since Insightin would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

83.    The litigation of Plaintiff's claims is manageable. Insightin's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

84.    Adequate notice can be given to Class Members directly using information maintained in Insightin's records.

85.    Unless a class-wide injunction is issued, Insightin may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Insightin may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Insightin may continue to act unlawfully as set forth in this Complaint.

86.     Insightin has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

**<u>FIRST CLAIM FOR RELIEF</u>**
**NEGLIGENCE**
**(on behalf of Plaintiff and the Class)**

87.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

88.     The risk that unauthorized persons would attempt to gain access to the PII and PHI and misuse it was foreseeable. As Insightin stores vast amounts of PII and PHI, it was inevitable that unauthorized individuals would attempt to access Insightin's databases, whether by malware or otherwise.

89.     PII and PHI are highly valuable, and Insightin knew, or should have known, the risk in obtaining, using, handling, emailing, and storing Plaintiff's and Class Members' PII and PHI and the importance of exercising reasonable care to those ends.

90.     Insightin owed a duty of care to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Insightin's security systems to ensure that Plaintiff's and Class Members' PII and PHI in Insightin's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

24

91.     Insightin had a common law duty to prevent foreseeable harm to its customers. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their PII and PHI because hackers routinely attempt to steal such information and use it for nefarious purposes, Insightin knew that it was more likely than not Plaintiff and Class Members would be harmed.

92.     It was also foreseeable that Insightin's failure to adequately safeguard their PII and PHI in accordance with industry standards for data security would result in the compromise of that PII and PHI. Insightin acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII and PHI by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII and PHI were stored, used, and exchanged, and those in its employ who were responsible for those actions.

93.     Insightin's duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII and PHI by companies such as Insightin. Various FTC publications and data security breach orders further form the basis of Insightin's duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

94.     Insightin owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII and PHI. Insightin also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and

occurrence of the Data Breach. This duty is directed at enabling Plaintiff and Class Members to take appropriate measures to protect their PII and PHI, to be vigilant in the face of an increased risk of harm, and take other steps to mitigate the harm caused by the Data Breach.

95. Timely notification was required, appropriate, and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to mitigate or ameliorate the damages caused by Insightin's misconduct.

96. Insightin owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Insightin knew or should have known would suffer injury-in-fact Insightin as a result of Insightin's inadequate security protocols. Insightin actively sought and obtained Plaintiff's and Class Members' PII and PHI.

97. Insightin breached the duties it owed to Plaintiff and Class Members described above and thus was negligent. Insightin breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect Plaintiff's and Class Members' PII and PHI; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) disclose in a timely fashion that Plaintiff's and the Class Members' PII and PHI in Insightin's possession had been or was reasonably believed to have been, stolen or compromised.

98.     As a direct and traceable result of Insightin's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

99.     Insightin's breach of its common-law duties to exercise reasonable care and negligence actually and proximately caused Plaintiff's and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII and PHI by criminals, improper disclosure of their PII and PHI, lost benefit of their bargain, lost value of their PII and PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Insightin's negligence. Those injuries-in-fact and damages are ongoing, imminent, immediate, and Plaintiff and Class Members continue to face them.

100.    As a direct and proximate result of Insightin's negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages in an amount to be proven at trial. Plaintiff and Class Members injuries include, but are not limited to, the following:

   a.  losing the inherent value of their PII and PHI;

   b.  having their private health information, including diagnoses and medications, exposed to people who they did not intend to disclose that information to;

   c.  losing the value of the explicit and implicit promises of data security;

   d.  identity theft and fraud resulting from the theft of their PII and PHI;

   e.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

f.   costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

g.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

101.   Plaintiff and Class Members are also entitled to injunctive relief requiring Insightin to: (1) strengthen its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) provide adequate credit monitoring to all Class Members.

**SECOND CLAIM FOR RELIEF**
**NEGLIGENCE PER SE**
**(on behalf of Plaintiff and the Class)**

102.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

103.   Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as Insightin of failing to use reasonable measures to protect PII and PHI.

104.   Insightin also had a duty under  FTC Act, 15 U.S.C. § 45 to provide adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII and PHI.

105.   Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

106.   Insightin had a duty to Plaintiff and Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII and PHI.

28

107. Insightin violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and PHI and not complying with industry standards. Insightin's conduct was particularly unreasonable given the nature and amount of PII and PHI obtained and stored and the foreseeable consequences of a data breach on its systems, and Insightin's experience with previous breaches.

108. Insightin breached their duty to Plaintiff and Class Members under the FTC Act by failing to provide reasonable or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII and PHI.

109. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

110. But for Insightin's wrongful and negligent breach of duty owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

111. The injury and harm suffered by Plaintiff and Class Members were the reasonably foreseeable result of Insightin's breach of its duty. Insightin knew or should have known that Insightin was failing to meet its duties and that the breach would cause Plaintiff and Class Members to suffer the foreseeable harms associated with the exposure of their PII and PHI.

112. Insightin's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

113. Insightin is a covered entity under HIPAA (42 U.S.C. § 1302d, et seq.). As an entity covered by HIPAA, Insightin had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' PHI.

114.    Plaintiff and Class Members are within the class of persons that HIPAA was intended to protect.

115.    Under HIPAA, Insightin had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 C.F.R. § 164.304 definition of encryption).

116.    The harm that occurred as a result of the Data Breach is the type of harm that HIPAA was intended to guard against. The Federal Health and Human Services' Office for Civil Rights has pursued enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures relating to protected health information, caused the same harm as that suffered by Plaintiff and Class Members.

117.    Insightin breached their duties to Plaintiff and Class Members under HIPAA, by failing to provide reasonable or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PHI.

118.    Insightin's failures to comply with applicable laws and regulations constitute negligence per se.

119.    But for Insightin's wrongful and negligent breach of the duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

120.    The injury and harm suffered by Plaintiff and Class Members were the reasonably foreseeable result of Insightin's breach of its duties. Insightin knew or should have known that Insightin was failing to meet its duties and that its breach would cause Plaintiff and Class Members to suffer the foreseeable harms associated with the exposure of their PII and PHI.

121.    Insightin's violation of HIPAA constitutes negligence per se.

122.    As a direct and proximate result of Insightin's negligence per se, Plaintiff and Class Members have suffered harm, including:

a.    losing the inherent value of their PII and PHI;

b.    having their private health information, including diagnoses and medications, exposed to people who they did not intend to disclose that information to;

c.    losing the value of the explicit and implicit promises of data security;

d.    identity theft and fraud resulting from the theft of their PII and PHI;

e.    costs and time associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

f.    costs and time associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

g.    unreimbursed losses relating to fraudulent charges;

h.    losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and

i.    other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII and PHI, entitling them to damages in an amount to be proven at trial.

123.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

124.    Plaintiff and Class Members are also entitled to injunctive relief requiring Insightin to: (1) strengthen its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) provide adequate credit monitoring to all Class Members.

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(on behalf of Plaintiff and the Class)**

125. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

126. Insightin offered medical services to Plaintiff and Class Members. Then, Plaintiff and Class Members accepted Insightin's services and paid for those services. And when Plaintiff and Class Members paid for the services, they also provided their PII and PHI to Insightin.

127. Thus, Plaintiff and Class Members entered implied contracts with Insightin. And so, each paid service before and during the Data Breach was made under these mutually agreed-upon implied contracts with Insightin.

128. Under those implied contracts, Insightin agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if their information was compromised or stolen.

129. Plaintiff and Class Members would not have provided and entrusted their PII and PHI to Insightin in the absence of an implied contract.

130. Insightin materially breached the contracts it entered with Plaintiff and Class Members by:

   a. Failing to safeguard and protect the PII and PHI of Plaintiff and Class Members.

   b. Failing to promptly notify Plaintiff and Class Members of the Data Breach and the subsequent exposure and theft of their PII and PHI.

   c. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement.

d.  Failing to ensure the confidentiality and integrity of the electronic PII and PHI that Insightin created, maintained, received, and transmitted.

131.  The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Insightin's material breaches of its agreements.

132.  Plaintiff and Class Members performed as required under the relevant agreement, or Insightin's conduct resulted in the waiver of such performance.

133.  All contracts include the covenant of good faith and fair dealing. Thus, all contracts impose on each party a duty of good faith and fair dealing. That duty encompasses the following:

a.  The parties must act with honesty in fact in the conduct or transactions concerned.

b.  The parties must act with good faith and fair dealing when executing contracts and discharging performance and other duties according to their terms so as to preserve the spirit, and not merely the letter, of the bargain.

c.  The parties are mutually obligated to comply with both the substance and form of their contracts.

134.  Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct is justified. Bad faith may be overt or may consist of inaction. And fair dealing may require more than honesty.

135.  In this case, Insightin failed to advise Plaintiff and Class Members of the Data Breach promptly. In these and other ways, Insightin violated its duty of good faith and fair dealing.

136.     Insightin, through numerous material breaches of the implied contracts, injured both Plaintiff and Class Members and sustained actual losses and damages as described above, including that they did not get the benefit of the bargain for which they paid for.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (on behalf of Plaintiff and the Class)

137.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

138.     This claim is pled in the alternative to Plaintiff's claim for breach of implied contract.

139.     Plaintiff and Class Members conferred benefits upon Insightin in the form of payments. In addition, Insightin benefitted from receiving Plaintiff's and Class Members' PII and PHI and from its ability to retain and use that information. Such data is used to facilitate both payment and the provision of services. For instance, by retaining Plaintiff's and Class Members' PII and PHI, Insightin could offer continued service for a patient visiting more than one time, and not have to ask patients to provide medical history information over and over again. This time saving measure creates additional value for patients and incentivizes them to use Insightin's services again.

140.     Insightin also understood and appreciated that Plaintiff's and Class Members' PII and PHI was private and confidential and its value depended upon Insightin maintaining its privacy and confidentiality.

141.     Insightin appreciated or knew of the benefits that it received. Under principles of equity and good conscience, the Court should not allow Insightin to retain the full value of these benefits, specifically, Plaintiff's and Class Members' payments, PII and PHI.

34

142.    But for Insightin's willingness and commitment to maintain its privacy and confidentiality, that PII and PHI would not have been transferred to and entrusted to Insightin. Further, if Insightin had disclosed that its data security measures were inadequate, Insightin would not have been permitted to continue in operation by regulators and its customers.

143.    As a result of Insightin's wrongful conduct as alleged in this Complaint (including, among things, its knowing failure to employ adequate data security measures, its continued maintenance and use of the PII and PHI belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that PII and PHI), Insightin has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members. Insightin continues to benefit and profit from its retention and use of the PII and PHI while its value to Plaintiff and Class Members has been diminished.

144.    Insightin's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' PII and PHI, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

145.    Under the common law doctrine of unjust enrichment, it is inequitable for Insightin to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and Class Members in an unfair and unconscionable manner. Insightin's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

146.    The benefit conferred upon, received, and enjoyed by Insightin was not conferred officiously or gratuitously, and it would be inequitable and unjust for Insightin to retain the benefit.

147. Insightin is therefore liable to Plaintiff and Class Members for restitution in the amount of the benefit conferred on Insightin as a result of its wrongful conduct, including specifically the value to Insightin of the PII and PHI that was stolen in the Data Breach and the profits Insightin is receiving from the use of that information.

148. Insightin should be compelled to disgorge into a common fund, for the benefit of Plaintiff and Class Members, all funds that it unlawfully or inequitably Insightin obtained as a result of its misconduct and the resulting Data Breach.

## FIFTH CLAIM FOR RELIEF
### Declaratory Judgment
### (on behalf of Plaintiff and the Class)

149. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

150. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

151. An actual controversy has arisen in the wake of the Insightin Data Breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' Personal Information and whether Insightin is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII and PHI. Plaintiff alleges that Insightin's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of

their PII and PHI and remain at imminent risk that further compromises of their PII and PHI will occur in the future.

152.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

153.    Insightin continues to owe a legal duty to secure consumers' PII and PHI and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;

154.    Insightin continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII and PHI.

155.    The Court also should issue corresponding prospective injunctive relief requiring Insightin to employ adequate security protocols consistent with law and industry standards to protect consumers' PII and PHI.

156.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Insightin. The risk of another such breach is real, immediate, and substantial. If another breach at Insightin occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

157.    The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Insightin if an injunction is issued. Among other things, if another massive data breach occurs at Insightin, Plaintiff and Class Members will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Insightin of

complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Insightin has a pre-existing legal obligation to employ such measures.

158. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Insightin, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose PII and PHI would be further compromised.

**SIXTH CLAIM FOR RELIEF**
**Maryland Personal Information Protection Act**
**Md. Comm. Code §§ 14-3501, *et seq*.**
**(on behalf of Plaintiff and the Class)**

159. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

160. Under Md. Comm. Code § 14-3503(a), "[t]o protect Personal Information from unauthorized access, use, modification, or disclosure, a business that owns or licenses Personal Information of an individual residing in the State shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of Personal Information owned or licensed and the nature and size of the business and its operations."

161. Insightin is a business that owns or licenses computerized data that includes Personal Information as defined by Md. Comm. Code §§ 14-3501(b)(1) and (2).

162. Plaintiff and Class Members are "individuals" and "customers" as defined and covered by Md. Comm. Code §§ 14-3502(a) and 14-3503.

163. Plaintiff's and Class Members' PII and PHI includes Personal Information as covered under Md. Comm. Code § 14-3501(d).

164. Insightin did not maintain reasonable security procedures and practices appropriate to the nature of the Personal Information owned or licensed and the nature and size of its business and operations in violation of Md. Comm. Code § 14-3503.

165. The Data Breach was a "breach of the security of a system" as defined by Md. Comm. Code § 14-3504(1). Under Md. Comm. Code § 14-3504(b)(1), "[a] business that owns or licenses computerized data that includes Personal Information of an individual residing in the State, when it discovers or is notified of a breach of the security system, shall conduct in good faith a reasonable and prompt investigation to determine the likelihood that Personal Information of the individual has been or will be misused as a result of the breach."

166. Under Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), "[i]f, after the investigation is concluded, the business determines that misuse of the individual's Personal Information has occurred or is reasonably likely to occur as a result of a breach of the security system, the business shall notify the individual of the breach" and that notification "shall be given as soon as reasonably practical after the business discovers or is notified of the breach of a security system."

167. Because Insightin discovered a security breach and had notice of a security breach, Insightin had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

168. By failing to disclose the Data Breach in a timely and accurate manner, Insightin violated Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2).

169. As a direct and proximate result of Insightin's violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2), Plaintiff and Class Members suffered damages, as described above.

170.    Pursuant to Md. Comm. Code § 14-3508, Insightin's violations of Md. Comm. Code §§ 14-3504(b)(2) and 14-3504(c)(2) are unfair or deceptive trade practices within the meaning of the Maryland Consumer Protection Act, 13 Md. Comm. Code §§ 13-101 et seq. and subject to the enforcement and penalty provisions contained within the Maryland Consumer Protection Act.

171.    Plaintiff and Class Members seek relief under Md. Comm. Code §13-408, including actual damages and attorney's fees.

**SEVENTH CLAIM FOR RELIEF**
**Maryland Consumer Protection Act**
**Md. Code Ann., Com. Law §§ 13-301, *et seq.***
**(on behalf of Plaintiff and the Class)**

172.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

173.    Insightin is a person as defined by Md. Code Comm. Law § 13-101(h).

174.    Insightin's conduct as alleged herein related to "sales," "offers for sale," or "bailment" as defined by Md. Code Comm. Law § 13-101(i) and § 13-303.

175.    Class Members are "consumers" as defined by Md. Code Comm. Law § 13-101(c).

176.    Insightin advertises, offers, or sell "consumer goods" or "consumer services" as defined by Md. Code Comm. Law § 13-101(d).

177.    Insightin advertised, offered, or sold goods or services in Maryland and engaged in trade or commerce directly or indirectly affecting the people of Maryland.

178.    Insightin engaged in unfair and deceptive trade practices, in violation of Md. Code, Com. Law § 13-301, including:

40

a. False or misleading oral or written representations that have the capacity, tendency, or effect of deceiving or misleading consumers;

b. Representing that consumer goods or services have a characteristic that they do not have;

c. Representing that consumer goods or services are of a particular standard, quality, or grade that they are not;

d. Failing to state a material fact where the failure deceives or tends to deceive;

e. Advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered;

f. Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental.

179.    Insightin engaged in these unfair and deceptive trade practices in connection with offering for sale or selling consumer goods or services in violation of Md. Code, Comm. Law § 13-303, including:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' PII and PHI, which was a direct and proximate cause of the Data Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures

following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Code, Comm. Law § 14-3503, which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' PII and PHI, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Code, Comm. Law § 14-3503;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' PII and PHI; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, and the Maryland Personal Information Protection Act, Md. Code, Com. Law § 14-3503.

180.  Insightin's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Insightin's data security and ability to

protect the confidentiality of consumers' PII and PHI. Insightin's misrepresentations and omissions would have been important to a significant number of consumers in making financial decisions.

181. Insightin intended to mislead Plaintiff and Class Members and induce them to rely on its misrepresentations and omissions.

182. Had Insightin disclosed to Plaintiff and Class Members that its data systems were not secure and, thus, vulnerable to attack, Insightin would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Insightin received, maintained, and compiled Plaintiff's and Class Members' PII and PHI as part of the services Insightin provided and for which Plaintiff and Class Members paid without advising Plaintiff and Class Members that Insightin's data security practices were insufficient to maintain the safety and confidentiality of Plaintiff's and Class Members' PII and PHI. Accordingly, Plaintiff and the Class Members acted reasonably in relying on Insightin's misrepresentations and omissions, the truth of which they could not have discovered.

183. Insightin acted intentionally, knowingly, and maliciously to violate Maryland's Consumer Protection Act, and recklessly disregarded Plaintiff's and Class Members' rights. Insightin's past data breaches and breaches within the hospitality industry put it on notice that its security and privacy protections were inadequate.

184. As a direct and proximate result of Insightin's unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Insightin as they would not have paid Insightin for goods

and services or would have paid less for such goods and services but for Insightin's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; time and money spent cancelling and replacing passports; loss of value of their PII and PHI; and an increased, imminent risk of fraud and identity theft.

185.   Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, restitution, disgorgement, injunctive relief, and attorneys' fees and costs.

**EIGHTH CLAIM FOR RELIEF**
**District of Columbia Consumer Security Breach Notification Act**
**D.C. Code §§ 28-3851, *et seq.***
**(on behalf of Plaintiff and the Class)**

186.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

187.   Insightin is a business that owns or licenses computerized data that includes Personal Information as defined by D.C. Code § 28-3852(a).

188.   Plaintiff's and Class Members' PII and PHI includes Personal Information as covered under D.C. Code § 28-3851(3).

189.   Insightin is required to accurately notify Plaintiff and Class Members if it becomes aware of a breach of its data security system in the most expedient time possible and without unreasonable delay under D.C. Code § 28-3852(a)

190.   Because Insightin was aware of a breach of its security system, Insightin had an obligation to disclose the data breach in a timely and accurate fashion as mandated by D.C. Code § 28-3852(a).

191.    By failing to disclose the Data Breach in a timely and accurate manner Insightin violated D.C. Code § 28-3852(a).

192.    As a direct and proximate result of Insightin's violations of D.C. Code § 28-3852(a), Plaintiff and Class Members suffered damages, as described above.

193.    Plaintiff and Class Members seek relief under D.C. Code § 28-3853(a), including actual damages.

**NINTH CLAIM FOR RELIEF**
**District of Columbia Consumer Protection Procedures Act**
**D.C. Code §§ 28-3904, *et seq.***
**(on behalf of Plaintiff and the Class)**

194.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

195.    Insightin is a "person" as defined by D.C. Code § 28-3901(a)(1).

196.    Insightin is a "merchant" as defined by D.C. Code § 28-3901(a)(3).

197.    Plaintiff and Class Members are "consumers" who purchased or received goods or services for personal, household, or family purposes, as defined by D.C. Code § 28-3901.

198.    Insightin advertised, offered, or sold goods or services in the District of Columbia and engaged in trade or commerce directly or indirectly affecting the people of the District of Columbia.

199.    Insightin engaged in unfair, unlawful, and deceptive trade practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of goods and services in violation of D.C. Code § 28-3904, including:

    a.   Representing that goods or services have characteristics that they do not have;

45

b.  Representing that goods or services are of a particular standard, quality, grade, style, or model, when they are of another;

c.  Misrepresenting a material fact that has a tendency to mislead;

d.  Failing to state a material fact where the failure is misleading;

e.  Advertising or offering goods or services without the intent to sell them as advertised or offered;

f.  Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

g.  Insightin's unfair, unlawful, and deceptive trade practices include:

h.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' PII and PHI, which was a direct and proximate cause of the Data Breach;

i.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

j.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

k.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' PII and PHI, including by implementing and maintaining reasonable security measures;

l.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45;

m.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' PII and PHI; and

n.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45.

200.  Insightin's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Insightin's data security and ability to protect the confidentiality of consumers' PII and PHI.

201.  Insightin intended to mislead Plaintiff and Class Members and induce them to rely on its misrepresentations and omissions.

202.  The above unfair and deceptive practices and acts by Insightin were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Class Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

203.  Insightin acted intentionally, knowingly, and maliciously to violate the District of Columbia's Consumer Protection Procedures Act, and recklessly disregarded Plaintiff's and Class Members' rights. Insightin's past data breaches and breaches within the hospitality industry put it on notice that its security and privacy protections were inadequate.

204. As a direct and proximate result of Insightin's unfair, unlawful, and deceptive trade practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Insightin as they would not have paid Insightin for goods and services or would have paid less for such goods and services but for Insightin's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; time and money spent cancelling and replacing passports; loss of value of their PII and PHI; and an increased, imminent risk of fraud and identity theft.

205. Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, attorneys' fees and costs, the greater of treble damages or $1,500 per violation, and any other relief that the Court deems proper.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiff and his counsel to represent the Class;

b. for equitable relief enjoining Insightin from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c.  for equitable relief compelling Insightin to use appropriate cybersecurity methods and policies with respect to PII and PHI collection, storage, and protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

d.  for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e.  for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.  for prejudgment interest on all amounts awarded; and

g.  such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 5, 2026                    Respectfully submitted,


                                           */s/ Panida A. Anderson*
                                           Panida A. Anderson (D. Md. Bar No. 30780)
                                           **BAILEY & GLASSER LLP**
                                           1055 Thomas Jefferson Street NW
                                           Suite 540
                                           Washington, DC 20007
                                           (202) 499-1476
                                           panderson@baileyglasser.com

                                           Bart D. Cohen (*pro hac vice* forthcoming)
                                           **BAILEY & GLASSER LLP**
                                           1622 Locust Street
                                           Philadelphia, PA  19103
                                           (215) 274-9420
                                           bcohen@baileyglasser.com

                                           *Attorneys for Plaintiff and the Proposed Class*